UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RUSSELL ALLEN ANGLEN,  )  <br>  )  <br>    Plaintiff  )  <br>  )  <br>v.  )  <br>  )  <br>SOCIAL SECURITY ADMINISTRATION  )  <br>COMMISSIONER,  )  <br>  )  <br>    Defendant  )  | No. 1:13-cv-00167-NT |

**REPORT AND RECOMMENDED DECISION**

After considering Plaintiff Russell Allen Anglen's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, determined that although Plaintiff has severe impairments, he retains the functional capacity to perform substantial gainful activity, both in past relevant work and in other occupations. Defendant, therefore, denied Plaintiff's request for disability benefits.

Following a review of the record, and consideration of the parties' written and oral arguments, as explained below, the recommendation is that the Court remand the case for further administrative proceedings.

**THE ADMINISTRATIVE FINDINGS**

Because Defendant's Appeals Council "found no reason" to review it, Defendant's final decision is the December 13, 2012, decision of the Administrative Law Judge (ALJ). The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing Title II disability claims. *See* 20 C.F.R. § 404.1520.

At step 1 of the sequential evaluation process, the ALJ determined that Plaintiff satisfied the insured status requirements of Title II through December 31, 2014, and further concluded that

Plaintiff had not engaged in substantial gainful activity beginning October 15, 2009, the date of alleged onset of disability. (ALJ Decision ¶¶ 1-2.) At the second stage of the analysis, the ALJ found that Plaintiff has severe mental impairments consisting of polysubstance abuse in early remission and personality disorder not otherwise specified. (*Id.* ¶ 3.) The ALJ then found (at stage 3) that the combination of impairments would not meet or equal any listing in the Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. In addition, the ALJ concluded that Plaintiff's mental limitations impose only mild limitations in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace. The ALJ also found no episodes of decompensation of extended duration. (*Id.* ¶ 4.)

Prior to conducing the evaluation contemplated at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity. The ALJ found that Plaintiff's combined impairments result in a residual functional capacity for a full range of work at all levels of exertion, subject to the following nonexertional limitation: that Plaintiff can understand, remember, carry out, and persist only with simple instructions and tasks. (*Id.* ¶ 5.) Based on this residual functional capacity assessment, the ALJ concluded at step 4 that Plaintiff is able to engage in past relevant work as a utility pole line worker, which requires very heavy levels of exertion. (*Id.* ¶ 6.) In addition, the ALJ determined that if a step 5 inquiry were required, other work would be available to Plaintiff within the parameters of Plaintiff's residual functional capacity. (*Id.*)

At the administrative hearing, a vocational expert testified as to the employment opportunities available to a person with Plaintiff's vocational profile and residual functional capacity. Based on the expert's testimony, the ALJ concluded that Plaintiff could engage in other substantial gainful employment, including as a store laborer, landscape laborer, and auto detailer. (*Id.*) The ALJ, therefore, determined that Plaintiff was not disabled from the date of alleged onset

through the date of the administrative decision. (*Id.* ¶ 7.)

## PLAINTIFF'S STATEMENT OF ERRORS

Plaintiff argues that the ALJ erred by failing to acknowledge and discuss Plaintiff's psychiatric hospitalization approximately two weeks before the administrative hearing, and by rejecting the treating source vocational assessments offered by Sharon Smith, Psy.D. (Statement of Errors at 2-3; Exhs. 19F & 27F.) Plaintiff also contends that the ALJ must have inappropriately interpreted raw medical data because none of the consulting expert opinions upon which the ALJ relied considered the more recent hospital admission, or certain findings of Dr. Smith. Dr. Smith's findings were included in her May 24, 2012, neuropsychological assessment report (Exh. 19F), which report was issued approximately two weeks after the last disability services consulting expert offered an opinion on Plaintiff's mental residual functioning capacity, and five months prior to the hearing before the administrative hearing. (*Id.* at 4-5.) Plaintiff asserts that the failure to consider Dr. Smith's report is of particular significance because the vocational expert indicated that the marked limitations found by Dr. Smith would preclude all work activity. (*Id.* at 5.)

### A. Standard of Review

The Court must affirm the administrative decision provided that the ALJ applied the correct legal standard, and provided that the decision is supported by substantial evidence. This standard of review applies even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (*per curiam*); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive

when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## B. Procedural and Factual Background

Plaintiff alleges that the disability began in October 2009. Relevant treatment records reflect that at that time, Plaintiff sought in-patient treatment for alcohol dependency after learning of some liver damage resulting from his alcohol consumption. (Louisa Barnhart Discharge Note, Exh. 5F/2.) Plaintiff's discharge diagnoses included alcohol dependency, post-traumatic stress disorder from childhood abuse, and moderate to severe Axis IV psychosocial stressors (i.e., quitting a job, financial issues, and family issues). Contributing factors also included a history of polysubstance abuse and a period of imprisonment for 10 years on a burglary conviction. (*Id.*)

In May 2011, Gary Rasmussen, Ph.D., conducted a psychological evaluation of Plaintiff. (Exh. 8F.) Dr. Rasmussen diagnosed post-traumatic stress disorder, polysubstance dependence, in remission, and antisocial personality disorder. Based on his examination of Plaintiff, his interview of Plaintiff, and his review of Plaintiff's history, Dr. Rasmussen opined that although Plaintiff would do well socially, Plaintiff would have problems with concentration and complex instructions, Plaintiff's ability "is fragile and easily disturbed by psychiatric symptomology," and Plaintiff would not be reliable in terms of attendance, productivity, pace or persistence. (PageID # 368.)

On May 10, 2012, disability services consulting physician Aroon Suansilppongse, MD, reviewed Plaintiff's medical records and provided a psychiatric review technique assessment and a mental residual functional capacity assessment. (Exhs. 16F, 17F.) Dr. Suansilppongse's expert opinions are consistent with the ALJ's findings.

In her neuropsychological assessment report dated May 25, 2012, Dr. Smith wrote that

Plaintiff's "cognitive test results are generally quite encouraging," with some areas of concern. (PageID # 552.) Dr. Smith confirmed the diagnoses of post-traumatic stress disorder, major depressive disorder, and substance dependence in sustained remission. (*Id.* # 552-553.) She concluded her report with an itemization of vocational restrictions based on marked impairment in relation to multiple work-related functions. (*Id.* # 554.) The restrictions are supported by a September 2012 mental impairment questionnaire signed by Dr. Smith and Bill Lord, Plaintiff's therapist, which questionnaire identifies multiple areas of marked limitations and an extreme social limitation. (Exh. 27F.)

On October 17, 2012, Plaintiff self-referred for treatment of "suicidal thoughts, no plan." (Exh. 30F.) The associated history report reflects multiple situational stressors and depression secondary to becoming clean and sober, though marijuana use was also noted. Plaintiff's counselor referred him to the VA hospital in Togus for assessment and inpatient treatment. The VA hospital admitted him for care. The records reflect that approximately two months before his admission, Plaintiff's medication was changed due to increased anger, use of THC, and Plaintiff's reported intent to electrocute himself. (PageID # 823-24.) The records of Plaintiff's regular treatment provider do not appear to include reference to medication issues, or an ongoing concern about suicide. The treatment progress notes of Plaintiff's counselor, Bill Lord, in the summer of 2012, reveal a focus on behavioral counseling to address Plaintiff's emotional response to stressors, hyper-reactivity, isolative behaviors, concern over pending SSDI proceedings and foreclosure proceedings, and family relations. (Exh. 29F.)

### C. Discussion

Plaintiff maintains that the ALJ minimized the significance of, or disregarded, the most recent medical evidence: the neuropsychological evaluation findings of Dr. Smith and the VA

5

hospitalization. At a minimum, Plaintiff contends, the ALJ's findings need to be supported by an expert review and assessment.

Defendant argues that the hospital admission for suicidal ideation does not support a remand because the admission reflects "a brief deterioration in Plaintiff's mental status due to serious financial and family stressors at a time when he was not taking his prescribed depression medications." (Opposition at 3.) More specifically, Defendant asserts that there is nothing in the medical record related to the admission which should alter the ALJ's residual functional capacity findings.

The record establishes that the ALJ considered Dr. Smith's neuropsychological report without the benefit of expert testimony or a subsequent written assessment consistent with the ALJ's findings. Although he reviewed Dr. Smith's records, he afforded her opinion little weight because, in his view, the opinion was merely based on Plaintiff's subjective complaints and was not consistent with other evidence in the case. The ALJ also made no mention of Plaintiff's most recent hospitalization based on suicidal ideation.

"The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen*, 172 F.3d at 35. "With a few exceptions . . ., an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 17 (1st Cir. 1996). In particular, an ALJ ordinarily needs an expert's opinion when it comes to translating raw medical records into a residual functional capacity finding, unless, as is seldom the case, the record permits "a commonsense judgment about functional capacity" that "would be apparent even to a layperson." *Id.*

In this case, two significant medical developments (i.e., Dr. Smith's report and Plaintiff's

6

VA hospitalization) occurred *after* Dr. Suansilppongse evaluated Plaintiff's records and issued the report upon which the ALJ relied. The findings of Dr. Smith, which included restrictions or limitations on several work-related functions, require more than the ALJ's lay assessment. An expert review of Dr. Smith's evaluation is particularly important given Plaintiff's hospital admission for suicidal ideation, a situation that could be viewed as consistent with Dr. Smith's findings, including her specific observation that among the "marked impairments in [Plaintiff's] ability to perform … work related functions" was "[t]he ability to respond appropriately to criticism from supervisors, which could trigger PTSD symptoms and/or suicidality." (Exh. 19F.) In short, under these circumstances, one cannot reasonably conclude that the record permits "a commonsense judgment about functional capacity" that "would be apparent even to a layperson." *Id.*

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court remand Plaintiff's Title II claim for further proceedings.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

March 28, 2014